(Decided 26th February, 1879.)

---

## THE APPEAL TAX COURT OF BALTIMORE CITY *vs.* THE REGENTS OF THE UNIVERSITY OF MARYLAND.

*What Hospitals were Exempted from Taxation under the Act of 1876, ch. 260—Colleges not Exempt under that Act—Construction of the Act of 1812, ch. 159, sec. 18—Immunity from Taxation given to Colleges by the Acts of 1803, ch. 92, and 1812, ch. 191, a Gratuity—Power of Taxation—Act of 1878, ch. 413, not Retrospective.*

The property belonging to the appellees, designated as the Maryland Infirmary, including the ground it actually covers, and the furniture and equipments thereof, used for the purposes of a hospital, where

458 MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Regents of the University of Md.

the indigent, sick and afflicted are received and treated, was exempted from taxation by the second section of the Act of 1876, ch. 260.

The property belonging to the appellees, occupied as the School of Medicine of the University of Maryland, was not exempted from taxation under the Act of 1876, ch. 260; the exception from taxation contained in the eighteenth section of the Act of 1812, ch. 159, (the charter of the appellee,) which provided, "that the beneficial exception in favor of all property, real and personal, owned by colleges contained in the first section of the Act of 1803, ch. 92, entitled 'an Act for the valuation of real and personal property within this State;' or which may be contained in any future Act, be, and the same is hereby extended to all the property, real and personal, belonging to, or hereafter to be owned by the said University," not being continued by the Act of 1876; which contains no exception in favor of college property, nor in favor of the appellees in that regard.

The privilege and immunity given to colleges by the General Assessment Act of 1803, ch. 92, and by that of 1812, ch. 191, was a mere gratuity, subject to the legislative will, and might at any time be altered or revoked by the General Assembly.

The power of taxation will never be held to be relinquished by the State, unless the intention to relinquish it is declared in clear and unambiguous terms.

The Act of 1878, ch. 413, is not retrospective in its operation, and does not affect the decision of an appeal, in proceedings had under the Act of 1876, ch. 260.

APPEAL from the Baltimore City Court.

The appeal in this case was taken by the Appeal Tax Court, from an order of the Court below, passed on the 24th May, 1878, in proceedings instituted by the Regents of the University of Maryland, and by the Faculty of Physic of that University, under the Act of 1876, ch. 260, sec. 28, whereby the appellant was directed to strike from the list of property valued and assessed to the appellees, as not subject to taxation, certain property mentioned in the petition of the appellees. The case is further stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J.

*A. Leo Knott, State's Attorney for Baltimore City,* and *Charles J. M. Gwinn, Attorney-General,* for the appellant.

Universities were not mentioned in the General Assessment Act of 1803, ch. 92, as entitled to any exemption from taxation. It was, therefore, doubtless, apprehended that the University of Maryland, incorporated by the Act of 1812, ch. 159, would be subject to taxation under the Act of 1803, ch. 92, unless provision was made for placing it upon the same footing with colleges, which were exempted from taxation under that Act. It was, for this reason, provided in the eighteenth section of the Act of 1812, ch. 159, incorporating the University, that it should have the immunities which were granted to colleges within this State by the Act of 1803, ch, 92, or which might be granted by any subsequent Act to colleges within this State.

The purpose of sec. 18, it would seem, was only to accord to the new University the same immunities from taxation which were enjoyed by colleges in this State under the general taxing laws of the State. If the immunities of such colleges were extended by a general law, it was, in effect, provided that the new University should have the advantage of such extension. The Act went no further than this. Does it not follow that it was equally the intention of the Legislature that the new University should not enjoy, at any time, *greater* immunities than all colleges in the State might claim under its general taxing laws?

If this construction of the meaning of the eighteenth section of the Act of 1812, ch. 159, be not adopted, we must reach the conclusion that the General Assembly intended that the provision made by the eighteenth section of the charter of the appellees was intended to vest

in the appellees an irrevocable right to any immunity granted to colleges, as a class, in any subsequent general Act; and that such immunities, granted originally and thus supplemented, must abide with the appellees, even if the General Assembly should change or repeal the general Act by which one or more of them was granted. It cannot be that this conclusion is right; because such conclusion would give to the appellees far greater advantages than are possessed by any college in this State.

We are necessarily compelled to adhere to the more limited construction of the eighteenth section of the Act of 1812, ch. 159, and to ask the Court to decide that, under that section, the appellees could not, in any year, claim any larger exemption from taxation than could have been claimed by any college in the State in such year. The appellees certainly cannot show that an irrevocable grant of immunity from taxation has been conferred upon the University by the General Assembly in clear and explicit terms, or by necessary implication; and, therefore, the question whether or not the exemption has been granted must be resolved against the presumption of such grant. *County Commissioners of Anne Arundel County vs. Annapolis and Elkridge Railroad Company,* 47 *Md.,* 611, 612; *Wilmington Railroad vs. Reid,* 13 *Wallace,* 266, 267; *Mayor and City Council vs. Baltimore and Ohio Railroad Company,* 6 *Gill,* 292; *Mayor vs. State,* 15 *Md.,* 391, 392, 467; *Buchanan vs. County Commissioners,* 47 *Md.,* 293; *Providence Bank vs. Billings,* 4 *Peters,* 561; *Ohio Life Insurance Company vs. Debolt,* 16 *Howard,* 435; *Jefferson Bank vs. Skelly,* 1 *Black,* 446; *Delaware Railroad Tax,* 18 *Wallace,* 226; *North Missouri Railroad Company vs. Maguire,* 21 *Wallace,* 61; *Tucker vs. Ferguson,* 22 *Wallace,* 575.

*Thomas W. Hall* and *S. T. Wallis,* for the appellees.

By the Act of 1812, ch. 159, sec. 18, the appellees were given the advantage of the beneficial exemption in favor

of all property, real and personal, owned by colleges, contained in the Act of 1803, ch. 92, and of all exemptions to be given by any future Act, and the same was extended to all of the property, real and personal, which they might subsequently acquire, as well as that belonging to them at the time. The same exemption given by the Act of 1803, ch. 92, was renewed, in terms, by the Act of the same session of 1812, ch. 191, sec. 1. The charter itself discloses, not only in its preamble, but in the 19th and 20th sections, the desire of the Legislature to establish the new University under the most favorable conditions, and with every advantage in the legislative gift. The 20th section provides in the strongest and amplest terms, that the Act shall be "construed, reputed and judged, in all cases, most favorably and on the behalf and for the best benefit and behalf of the said Regents and their successors, so as most effectually to answer the valuable ends of this Act of incorporation, towards the general advancement and promotion of the professions, sciences and arts." It does not seem necessary, therefore, to enter into any general discussion of the binding control of tax exemptions, in charters, over future Legislatures. The exemption is given here, as to present and future property, and embraces future as well as existing Acts of exemption. There hardly seems any room for doubt, that it was meant to be a permanent and irrevocable grant, under the rule for the construction of the charter, which the charter itself contains.

There are but two pieces of property exempted. The one, the Baltimore Infirmary, is a "hospital," built in part by money of the State, appropriated by the Act of 1874, ch. 324. The other, the Medical College, is "an incorporated educational institution." The infirmary, with its "equipments," is exempted by the Act of 1876, ch. 260, sec. 2. Both the infirmary and the college, with their "furniture," "equipments," and "the ground appur-

462        MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Regents of the University of Md.

tenant thereto, which may be necessary for the respective uses thereof," are exempted by the Act of 1878, ch. 413, sec. 3. The character of the buildings and furniture is sufficiently apparent on the face of the assessment and the order of the Court. That the lands are "appurtenant," is equally obvious, and that the Court found them necessary for the respective uses of the infirmary and college, (as they notoriously are,) will, it is believed, be presumed, in the absence of anything in the record to the contrary, under the rule laid down by the Court in the cases cited. *Lowe vs. Lowe,* 6 *Md.,* 356; *Clemens vs. The Mayor, &c.,* 16 *Md.,* 208.; *Hollowell vs. Miller,* 17 *Md.,* 305; *McCann vs. B. & O. R. R.,* 20 *Md.,* 202.

BARTOL, C. J., delivered the opinion of the Court.

The petition of the appellees alleges that certain property owned by them has been assessed for taxation under the Act of 1876, ch. 260, which it is alleged is exempted by law from valuation and assessment, and from State and municipal taxation.

The property consists of a lot of ground on the *north side* of *Lombard street,* between Greene and Paca streets, with the buildings thereon and furniture therein; assessed at the aggregate value of $44,700; and *secondly,* of a lot of ground, with the buildings thereon and furniture therein, situated on the southwest corner of Lombard and Greene streets, valued in the aggregate at $73,700.

The petition alleges that the whole of said last named property, designated as the "*Maryland Infirmary,*" is used for the purposes of a *hospital,* where the indigent sick and afflicted are received and treated. That the buildings and improvements were erected in part with money appropriated by the General Assembly, by the *Act of* 1874, *ch.* 324, wherein said appropriation is expressly declared to be "for the use of the Faculty of Physic of the University of Maryland, to be by it applied in aid of the erection

of a hospital upon ground belonging to the University of Maryland," and that all of said infirmary property is expressly exempted from taxation by the second section of the Act of 1876.

With respect to the property on the north side of Lombard street before mentioned, the same is claimed to be exempted from taxation by the Act of 1812, ch. 159, incorporating the petitioners.

The facts stated in the petition are supported by the affidavit of *S. T. Wallis, Esquire, Provost of the University of Maryland.*

The answer of the appellant avers that the petitioners were the owners of the property, and that the same and every part thereof was, when the valuation was made, subject to valuation and assessment for the purposes of taxation.

In disposing of the case, the facts stated in the petition must be considered as proved, the same being verified by the oath of a competent witness.

With respect to the lot and improvements on the southwest corner of Lombard and Greene streets, and the furniture and equipments thereof, these appear to be clearly within the exemption contained in the *second section* of the Act of 1876, in favor of "*hospitals or asylums,* so far as used for the benefit of the indigent and afflicted, including the ground they actually cover, and the equipments." Such we understand to be the character of this property, and the purposes for which it is used. We therefore affirm the order of the City Court directing the same to be stricken from the assessment list.

As to the property situated on the north side of Lombard street, viz., the lot of ground with the buildings thereon, occupied as the School of Medicine of the University of Maryland, the exemption is claimed under the charter of the appellees, being the *Act of* 1812, *ch.* 159.

The 18*th section* provides "that the beneficial exception in favor of all property, real and personal, owned by col-

464        MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Regents of the University of Md.

leges, contained in the first section of the Act of the General Assembly, passed at November session, 1803, ch. 92, entitled '*An Act for the valuation of real and personal property within this State*,' or which may be contained in any future Act, be and the same is hereby extended to all the property, real and personal, belonging to or hereafter to be owned by the said University."

By the first section of the Act of 1803, to which reference is made in the 18th section of the Act of 1812, above quoted, "*property belonging to any college*" was excepted from the operation of the Act, and exempted from valuation and assessment.

The same exception in favor of college property was re-enacted by the General Assessment law of 1812, ch. 191, sec. 1. It is not contained in the Act of 1876, under which the assessment in this case was made.

The question then turns upon the construction of the 18th section of the Act of 1812. Did this operate to confer on the appellees an irrevocable right and immunity, whereby all the property then held by the corporation, or thereafter acquired, should be forever exempt from taxation for State or municipal purposes.

In our judgment such was not the intent of the Legislature, and the language employed does not support such a construction. By the general assessment law then in force, (1803, ch. 92,) the property owned by colleges was exempted from assessment.

The privilege and immunity thereby given to colleges was a mere gratuity, subject to the legislative will, and might at any time be altered or revoked by the General Assembly. Now the 18*th section of the Act of* 1812 extended the same immunity to the appellees. The effect of this section was to place the University with respect to its property in the same position held by colleges within the State. The section provides in effect that the appellees should have the same immunity as was granted to col-

leges by the Act of 1803, or which might be granted by any subsequent Act to colleges within the State.

So long, therefore, as the property held by colleges is by law exempted from taxation, the benefit of that exemption is extended to the appellees by the 18*th section* of their charter.

It has been established by numerous decisions of this Court, of the Supreme Court of the United States, as well as by the whole current of authority in this country, that the power of taxation will never be held to be relinquished by the State, unless the intention to relinquish it is declared in clear and unambiguous terms.·

This cardinal rule of construction, the appellees contend is not applicable to the present case, because *the* 20*th section of the Act of* 1812 provides that the provisions of the charter shall be construed most favorably for the benefit and behalf of the Regents and their successors, so as most effectually to answer the ends of the Act of incorporation, toward the general advancement and promotion of the professions, sciences and arts.

Construing the 18th section in the most liberal and beneficial manner in favor of the appellees, we are unable to give to it the construction contended for in the appellees' argument, as granting to the corporation an absolute exemption and immunity from taxation, beyond the power of repeal or revocation by the Legislature.

And as by the Act of 1876 all exemptions from taxation which had before been granted, were repealed and revoked, so far as the General Assembly had the constitutional power to revoke the same, and as there is no exception in the Act in favor of the appellees, or in favor of colleges in the State, we are constrained to decide that the property owned by the appellees *on the north side of Lombard street* was liable to valuation and assessment under that Act, and consequently that the order of the City Court, directing

the same to be stricken from the assessment list, was erroneous.

This opinion has reference only to the assessment made under the Act of 1876. The provisions of that Act have been materially changed, and the privilege of exemption from taxation has been greatly extended *by the Act of* 1878, *ch.* 413. But it has been determined in several cases at the present term, that the Act of 1878 is not retrospective in its operation, and it in no manner affects the decision of the present appeal.

The order of the City Court, so far as it relates to the property assessed to the appellees on the southwest corner of Lombard and Greene streets, will be affirmed; but in so far as it relates to the property mentioned in the petition situated on the north side of Lombard street, the said order will be reversed and the record remanded.

*Affirmed in part, and*

*reversed in part, and*

*record remanded.*

(Decided 28th February, 1879.)